UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x

N.S. on behalf of himself and on behalf of his child, :
K.S., A.D. on behalf of herself, and her child, D.D.,
and on behalf of her child D.D.1, :

                           :

                     Plaintiffs, :

                           :

      -against-            :

                           :

NEW YORK CITY DEPARTMENT OF :
EDUCATION, THE BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF THE CITY :
OF NEW YORK, CHANCELLOR ~~DAVID C.~~
~~BANKS~~MELISSA AVILES-RAMOS, IN ~~HIS~~HER :
OFFICIAL CAPACITY, and THE CITY OF NEW
YORK, :

                           :

                  Defendants. :

——————————————————————— x

Civ. No. 23-cv-9786

~~FIRST~~ SECOND

AMENDED COMPLAINT

PRELIMINARY STATEMENT

    1.    This is an action brought by N.S. on behalf of himself and his adult child K.S.

("K.S. Plaintiffs"), and A.D. on behalf of her child, D.D.  and D.D.1 ("D.D. Plaintiffs")

(collectively "Plaintiffs"), alleging that Defendants, the New York City Department of Education

("DOE"), The Board of Education in the City School District in the City of New York ("BOE" or

the "School District"), and Chancellor ~~David C. Banks~~Melissa Aviles-Ramos, in ~~his~~her Official

Capacity ("Chancellor") (collectively "Defendants") violated the rights of Plaintiffs under the

Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.,

Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section 504"), 42 U.S.C. § 1983

("Section 1983"), as well as provisions of New York State law.

    2.    As further provided herein, Defendants have failed to implement a decision of the

State Review Officer ("SRO"), on behalf of K.S. Plaintiffs.

3.      Defendants have failed to implement the Plaintiff children's stay-put placement under the IDEA, as well as impartial hearing orders issued by administrative hearing officers under the IDEA.

4.      Defendants have adopted and failed to adopt systemic policies and practices that have violated Plaintiffs' rights including but not limited to (a) failing to ensure that there are enough individuals who have licenses to provide Applied Behavior Analysis ("ABA") to Plaintiffs, current and former children with autism and who are entitled to ABA pursuant to pendency or a hearing order; (b) limiting the services that individualized education program ("IEP") teams can recommend at a IEP meeting; (c) failing to offer or make available certain services, such as ABA, after-school services, extended day services, feeding therapy, and 1:1 instruction; (d) failing to ensure that there are appropriate programs for students with Autism who are transition-age; and (e) refusing to offer a free appropriate public education ("FAPE") to students up to the age of twenty-two.

5.      Defendants' failures are individual as to Plaintiffs as well as systemic as to Plaintiffs and to parents and students like Plaintiffs.

<u>JURISDICTION AND VENUE</u>

6.      This Court has jurisdiction over Plaintiffs' federal claims under the IDEA pursuant to 20 U.S.C. § 1415(i)(3), 42 U.S.C. § 1988, and as an action raising a federal question under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

7.      The Court has supplemental jurisdiction to adjudicate state claims arising out of the same facts as the asserted federal claims. 28 U.S.C. § 1367.

8.      Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1)

as it is the judicial district in which Defendants are situated and/or reside.

PARTIES

9.    Plaintiff, N.S., is the father and natural guardian of K.S., his child who has an eligible disability under both the IDEA and Section 504.

10.    As further described herein, K.S. is both autistic and deaf, with two Cochlear Implants.

11.    N.S. (on behalf of K.S.) is a named plaintiff in the class action *M.G. v. New York City Dep't of Educ.*, 13-cv-4369, pending in the United States District Court, Southern District of New York, an action that *inter alia* seeks remedies against Defendants for individual and systemic violations of the IDEA, Section 504, and other federal, state, and local laws, related to the provision of educational programs and related services for children with Autism, including those children who attend public and non-public schools (NPS).

12.    N.S. and K.S. reside in Queens, New York, with K.S.'s mother and brother.

13.    K.S. is currently 21 years old. His parents' first language is Arabic.

14.    K.S. currently has an IEP. He lacks the capacity to bring this suit on his own behalf. Further, under New York State law, IDEA rights do not transfer to students at the age of majority.

15.    Plaintiff, A.D.  is the mother and natural guardian of D.D., her child who had a disability under the IDEA and Section 504 and currently has a disability under Section 504.

16.    D.D. has Autism.

17.    D.D. graduated with a regular diploma in June 2023.

18.    Plaintiff A.D. is also the mother and natural guardian of D.D.1, her child who has a disability under the IDEA and Section 504 and currently has a disability under Section 504.

19.    A.D. (on behalf of D.D. and D.D.1) is a named plaintiff in the class action *M.G. v.*

*New York City Dep't of Educ.*, 13-cv-4369, pending in the United States District Court, Southern District of New York, an action that *inter alia* seeks remedies against Defendants for individual and systemic violations of the IDEA, Section 504, and other federal, state, and local laws, related to the provision of educational programs and related services for children with Autism, including those children who attend public and non-public schools (NPS).

20.     The D.D. Plaintiffs reside in Staten Island, with D.D.'s brother, D.D.1 and D.D.1's father.

21.     The IDEA permits, but does not require, States to transfer the rights conferred by the Act to students when they reach the age of majority under State law. 20 U.S.C. § 1415(m)(1). New York State law does not provide for the transfer of IDEA rights to students when they reach the age of majority. *See generally* N.Y. Educ. L. § 4401, *et seq.*; 8 N.Y.C.R.R. § 200, *et seq.* Consequently, N.S. remains the proper party to assert claims concerning K.S.'s rights under the IDEA.

22.     Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

23.     Upon information and belief, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") is a creation of the BOE under the bylaws of the BOE.

24.     Upon information and belief, according to Defendants, Defendant DOE is the official body charged with the responsibility of developing policies with respect to the administration and operation of the public schools in the City of New York, including programs and services for students with disabilities.  N.Y. Educ. Law § 2590-g.

25.     Defendant THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT

OF THE CITY OF NEW YORK ("BOE") was and continues to have the duties and obligations afforded to it under N.Y. Educ. Law §§ 2590-b, -g.

26.     Defendant Chancellor DAVID C. BANKSMELISSA AVILES-RAMOS, in hisher Official Capacity, ("the Chancellor"), is the current Chancellor of Defendants DOE and BOE and, as such, is entrusted with the specific powers and duties set forth in N.Y. Educ. Law § 2590-h.Law § 2590-h.  Chancellor Ramos succeeded former Chancellor David Banks, as well as his predecessors, all in their official capacities.

27.     All Defendants jointly and/or individually receive federal financial assistance.

28.     All Defendants jointly and/or individually constitute the "Local Educational Agency" under the IDEA.

29.     When the "DOE" is referenced throughout, the term DOE refers individually to Defendant DOE as well as collectively to Defendants.

LEGAL FRAMEWORK

**The IDEA**

30.     The IDEA is designed to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).

31.     States receiving federal financial assistance under the IDEA must adhere to the Act's procedural and substantive requirements and ensure that all eligible students with disabilities are afforded a FAPE. 20 U.S.C. § 1412(a).

32.     To be entitled to a FAPE, a student must have one or more of thirteen disabling conditions and, by reason of the disability, require special education and related services. 34 C.F.R. § 300.8(a)(1); *see also* 8 N.Y.C.R.R. § 200.1(zz).

33.    A FAPE must meet each student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *see also* 8 N.Y.C.R.R. §§ 200.1(qq), (ww), (fff).

34.    A FAPE must be provided in conformity with an Individualized Education Program ("IEP"). *See* 20 U.S.C. §§ 1401(9)(D), 1414(d)(2)(A); 8 N.Y.C.R.R. § 200.6(a)(2).

35.    Every student with designated disability classifications is entitled to an IEP, and the LEA must provide an IEP which is individually tailored to each student, and which sets forth the student's special education program and services. 20 U.S.C. § 1414(d); 8 N.Y.C.R.R. § 200.6(a)(2).

36.    "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

37.    School districts must have an IEP in place for each student with a disability at the beginning of each school year and must review that IEP not less than annually. 20 U.S.C. §§ 1414(d)(2)(A), (d)(4)(A)(i); *see also* 8 N.Y.C.R.R. § 200.4(f).

38.    The IDEA prescribes, in detail, the process for developing IEPs and their contents. 20 U.S.C. §§ 1414(d)(1), (d)(2); 34 C.F.R. §§ 300.320(a)-(b), 300.324; *see also* N.Y. Educ. Law § 4401, *et seq.*; 8 N.Y.C.R.R. § 200.4(d)(2).

39.    Before an initial IEP can be developed, a student must be evaluated in accordance with detailed procedures outlined in federal and state law. The IDEA mandates that school districts conduct a full and individualized initial evaluation of each student with a disability and reevaluate the student at least once every three years unless the parent and the school district agree otherwise. 20 U.S.C. §§ 1414(a)(1)(A), (a)(2)(B)(ii); *see also* 8 N.Y.C.R.R. §§ 200.4(b)(1)-(6).

40.    The school district must obtain informed consent from the parent before conducting

the initial evaluation. 20 U.S.C. § 1414(a)(1)(D)(i)(I); 34 C.F.R. § 300.300(a)(1)(i).

41.    The initial evaluation must be conducted within 60 days of receiving parental consent unless extended upon mutual agreement of the parent and the school district's Committee on Special Education ("CSE"). 34 C.F.R. § 300.301(c)(1)(i); 8 N.Y.C.R.R. § 200.4(b)(1).

42.    Evaluations must be "sufficiently comprehensive to identify all of the child's special education and related service needs, whether or not commonly linked to the disability category in which the child has been classified." 34 C.F.R. § 300.304(c)(6). School districts must assess students "in all areas related to the suspected disability, including, if appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities." 34 C.F.R. § 300.304(c)(4).

43.    The school district must ensure that "assessments and other evaluation materials used to assess" a student "are selected and administered so as not to be discriminatory on a racial or cultural basis" and "are provided and administered in the language and form most likely to yield accurate information on what the child knows and can do academically, developmentally, and functionally, unless it is not feasible to so provide or administer." 20 U.S.C. § 1414(b)(3)(A)(i)-(ii); *see also* 8 N.Y.C.R.R. §§ 200.4(b)(6)(i)(a), (d).

44.    For a student with limited English proficiency, the CSE must "consider the language needs of the child as such needs relate to the child's IEP." 20 U.S.C. § 1414(d)(3)(B)(ii); *see also* 8 N.Y.C.R.R. § 200.4(d)(3)(ii).

45.    For a student whose behavior impedes his or her learning or that of others, a functional behavioral assessment ("FBA") must be conducted "as necessary to ascertain the physical, mental, behavioral and emotional factors which contribute to the suspected disabilities." 8 N.Y.C.R.R. § 200.4(b)(1)(v).

46.     For a student "whose behavior impedes the child's learning or that of others," the CSE must "consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i); *see also* 8 N.Y.C.R.R. §§ 200.4(a)(3)(i), 200.22(b)(2). "If a particular device or service, including an intervention, accommodation or other program modification is needed to address the student's behavior that impedes his or her learning or that of others, the IEP shall so indicate. A student's need for a behavioral intervention plan shall be documented on the IEP and such plan shall be reviewed at least annually . . . ." 8 N.Y.C.R.R. § 200.22(b)(2).

47.     New York State law provides that "[w]ithin 60 school days of the receipt of consent to evaluate for a student not previously identified as having a disability, or within 60 school days of the referral for review of the student with a disability, the board of education shall arrange for appropriate special programs and services." 8 N.Y.C.R.R. § 200.4(e)(1).

48.     The school district must ensure that "[a]s soon as possible following development of the IEP, special education and related services are made available to the child in accordance with the child's IEP." 34 C.F.R. § 300.323(c)(2). There must be "no delay in implementing" a student's IEP. 34 C.F.R. § 300.103(c).

**Due Process Procedures**

49.     The IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions." *Murphy v. Arlington Cent. Sch. Dist.*, 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415).

50.     The IDEA permits parents to seek an independent educational evaluation ("IEE") if they disagree with the school district's evaluation. 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502; *see also* 8 N.Y.C.R.R. §§ 200.1(z), 200.5(g).

51.    If a parent "obtains an independent educational evaluation at public expense or shares with the public agency an evaluation obtained at private expense, the results of the evaluation . . . [m]ust be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child" and "[m]ay be presented by any party as evidence" in the context of a hearing conducted under the IDEA's due process procedures. 34 C.F.R. § 300.502(c); *see also* 8 N.Y.C.R.R. § 200.5(g)(1)(vi).

52.    Parents have the right to file a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

53.    In New York, IDEA due process complaints must be litigated in a hearing conducted at the initial administrative level before an Impartial Hearing Officer ("IHO"). N.Y. Educ. Law § 4404(1); 8 N.Y.C.R.R. §§ 200.5(i)-(j).

54.    New York State law places the burden of proof in impartial hearings on school districts, "including the burden of persuasion and burden of production," "except that a parent . . . seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement." N.Y. Educ. Law § 4404(1)(c).

55.    During the pendency of IDEA due process proceedings, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j).

56.    The decisions reached in impartial hearings are subject to administrative appeals to the State Review Officer ("SRO"), the second-tier administrative review under the IDEA. 34

C.F.R. § 300.514(b); N.Y. Educ. Law § 4404(2); 8 N.Y.C.R.R. § 200.5(k).

57.    An IHO decision that is not appealed is final and binding. *See* 34 C.F.R. § 300.514(a); 8 N.Y.C.CR.R. § 200.5(j)(5)(v).

58.    Parents who prevail in a due process hearing may have the school district, here the Defendants, pay their reasonable attorneys' fees, costs, and expenses. 20 U.S.C. § 1415(i)(3)(B)(i)(I).

<u>FACTS</u>

**N.S. and K.S.**

59.    The parties agree that K.S. has been diagnosed with and iswas classified with *inter alia* Autism Spectrum Disorder ("Autism"), an eligible disability classification under the IDEA and Section 504 through the end of the 2024-2025 school year.

60.    K.S. is also hearing impaired and has two Cochlear Implants.

61.    N.S. and his wife originally lived in Egypt and their native language is Arabic; N.S.'sS.'s wife, mother of K.S., has virtually no command of the English language. Although N.S. has some fluency in English, it is not developed as it relates to special education jargon.

62.    K.S. displays a variety of deficits and interfering behaviors, including delays in cognition, receptive, and expressive language, socialization, motor skills, and activities of daily living. These deficits are pervasive, and they transcend the behavioral, cognitive, communicative, social, and physical domains.

63.    K.S. engages in maladaptive behavior and also struggles with attending to tasks, self-direction, independent activities, following directions, paying attention, and interacting with peers and adults in private and group settings.

**K.S.'s Education History and History of Due Process Proceedings**

64.     N.S. and his wife have had to file numerous hearings leading up to the school years described herein, all to obtain services that are not offered on IEPs in New York City.

65.     As a result of Defendants' failure to provide a free appropriate public education ("FAPE") and to appropriately address K.S.'s many and varied disabilities and deficits, on or about July 1, 2019, N.S., through counsel, filed a DPC, alleging *inter alia* that (a) the DOE failed to provide K.S. with a FAPE for the 2017-2018, 2018-2019, 2019-2020 school years; (b) K.S. was entitled to compensatory education; (c) the compensatory education K.S. was seeking are services equal to the services K.S. was mandated to receive in pendency as of the date that the DPC was filed, June 30, 2019, up through the date on which the impartial hearing officer ("IHO") issues her final decision and, up through any appeals.

66.     Included in the relief requested, N.S. sought the following for K.S., including (a) placement in an appropriate New York State approved Non-Public School ("NPS") that employs 1:1 ABA or comparable therapy; (b) related services that includes hearing education services ("HES"); (c) assistive technology (AT); (d) a home-based ABA program, with ABA supervision; and (e) special transportation, among other relief.

67.     Defendant DOE assigned the DPC an Impartial Hearing Case No. 184049.

68.     On or about July 2, 2019 an ~~independent hearing officer~~ IHO (IHO I) was assigned to Case No. 184049.

69.     On or about August 23, 2019, following a hearing, IHO I issued two orders: an interim order requiring the DOE to fund an independent educational evaluation ("IEE") for K.S. (the "IEE-Interim Order") and an order on pendency (the "Pendency Order"). The Pendency Order directed the DOE to fund and immediately provide (a) K.S.'s program and services at QSAC (a New York State Approved Non-Public School) including (i) a 6:1:3 special class at the non-public

school ("NPS") (ii) 5x30 speech and language therapy ("SLT"), on a 1:1 basis; (iii) 2x30 occupational therapy (1:1)  ("OT"); (iv) 2x30 physical therapy (1:1) ("PT"); (v ) 5x30 hearing education services ("HES"); (vi) 30 hours per week of home-based ABA services; (vii) 2 hours per week of ABA supervision; (viii) special transportation; and (ix) AT (iPad and FM unit).

70.     The IHO further ordered that in the event the DOE was unable to fund related and home-based services as ordered, the parents shall have the right to find providers privately and have them funded by the DOE. The IEE-Interim Order and the Pendency Order are both incorporated herein by reference.

71.     The IHO further ordered that funding relief must continue for the purposes of pendency from the date of the requested hearing, July 1, 2019, and the start of the 2019-2020 extended school year and continue until Case No. 184049 was resolved, or as otherwise agreed to by the parties.

72.     On or about December 31, 2019, N.S., ~~though~~through counsel, filed an amended DPC, which the DOE assigned Case No. 191848.

73.     On or about January 20, 2020, pursuant to motion, Case No. 191848 was consolidated with Case No. 184049; both cases continued as Case No. 184049.

**History of K.S. Educational Program and the *MG* Class Action**

74.     Notably, K.S.'s program was created in 2010, pursuant to a Statement of Agreement and Interim Order issued on June 3, 2010, as well as a Findings of Fact and Decision in Case No. 122056.

75.     Since that time, N.S. has been engaged in near-constant litigation simply to keep the program in place and to obtain services for K.S., only to the have the DOE abdicate all responsibility to provide those services to K.S., leaving N.S. and his wife on their own to try to

implement pendency decisions and final orders.

76.    The parent litigated again and in 2013 another decision was issued upholding the program. In the interim, N.S., K.S.'s father, joined the *M.G. v. New York City* class action.

77.    Another decision was issued in N.S.'s favor on December 17, 2015, continuing the program for the 2015-2016 school year.

78.    In January 2016, the federal court in the *M.G.* class action found that Plaintiffs had put forth sufficient evidence of three policies that impact K.S. directly. First, Plaintiffs alleged, and the Defendants in *M.G.* admitted that when, as here, a student attends a state-approved private school, the student cannot receive an individualized education and is restricted to the services available at that particular school. Moreover, the court certified the NPS Directive Due Process subclass comprised of parents, including N.S. and parents like N.S., who despite winning additional related services that are not offered by the NPS program, year after year, have to constantly file hearings to keep the services. The SRO has held that application of the NPS Directive to any particular student denies the student a FAPE as it constitutes improper predetermination.

79.    The second policy challenged in *MG* was that the DOE does not offer 1:1 instruction, ABA services, and extended school day/afterschool/home-based services to children with Autism and, instead, forces their parents into annual litigation. As a result, the *M.G.* court certified the Autism Services Class. Moreover, the court certified the Autism Services subclass comprised of parents, including N.S. and parents like N.S., who despite winning Autism Services year after year, have to constantly file hearings to keep the services.

80.    Yet, despite winning class certification, N.S. was still trapped in the impartial hearing merry-go-round. Thus, when his decision for the 2015-2016 year expired on June 30, 2016,

he filed another DPC for the 2016-2017 school year.

81.     As previously stated, the IHO had issued an interim order on pendency at the beginning of the hearing; during the hearing, N.S. claimed as he does here, that the DOE had not implemented pendency; accordingly, on September 18, 2018, the IHO directed the DOE to reimburse the Parent for assistive technology and then also directed the DOE "shall further calculate the number of service sessions actually funded through pendency for the same time period, which calculations shall be provided to the parent within 30 days from the date of this Order." SRO 19-093 at 3-4.

82.     The DOE did not comply with this directive.

83.     In the 2016-2017 case, the DOE rested without defending a FAPE but yet not conceding it denied a FAPE. SRO No. 19-093 at 3. The DOE called no witnesses at the hearing.

84.     Further, the DOE never provided the information about missed pendency services to N.S. or the IHO. When the DOE failed to do so, the IHO issued a decision, allegedly awarding compensatory education to a degree but failing to clarify that it was the DOE's obligation to provide the services and failing to award some other relief, such as that the student should be allowed the use the services to push-in to QSAC. See SRO No. 19-093.

85.     The IHO had also failed to explicitly find that the DOE had denied a FAPE to N.S. despite the fact that the DOE did not meet its burden; given the lack of concession, the IHO's failure to rule that FAPE was denied could have been a pendency changing event. Thus, N.S. was forced to appeal to the SRO.

86.     The SRO decision was pending during the time that Case No. 184049 was also pending. Various issues were then decided and/or addressed by the SRO that are not relevant here. But what is relevant is that the SRO ruled, among other things, that N.S. was entitled to receive

compensatory pendency services in an hour-for-hour amount, based on the pendency order from the date of the prior DPC, up and until the date of the SRO's decision, which was September 14, 2020. *See* SRO No. 19-093 at 12.

87.     However, Defendants have not implemented the SRO's decision due, in part, to the fact that Defendants do not have a centralized mechanism for tracking and implementing SRO Decisions.

88.     Thus, although N.S. had FAPE claims and Section 504 claims for the 2017-2018, 2018-2019 and 2019-2020 school years, some aspect of the relief that N.S. was seeking in terms of compensatory education were already covered by the SRO's decision in SRO No. 19-093, up and through the date of that decision insofar as compensatory pendency was awarded.

89.     At the hearing on May 6, 2020, before the SRO issued its decision in SRO No. 19-093, the DOE's representative was scheduled to provide the DOE's position on the issues in the DPC. He stated "[t]his case is still under investigation. So if we are to proceed, the District will be submitting evidence and resting its case." T. 93. Thereafter, the DOE's representative admitted that its 2019 IEP was untimely. T. 93-94. Although the DOE did not submit any documents on that day, it subsequently on August 19, 2020, admitted several documents regarding the 2019-2020 school year.

90.     Notably, moreover, every year the Parents claimed that they are not provided evaluations, reports, IEPs and notices in their native language of Arabic, as they did in Case No. 184049. The DOE only produced documents in English. Further, the DOE did not produce any Prior Written Notice to K.S.'s parents, and certainly did not prove that the DOE provided any information to the parents in Arabic.

91.     The DOE failed to introduce any evidence about the 2017-2018 or 2018-2019

school years which were also at issue in the hearing.

92.    On January 21, 2022, IHO I issued an interim order directing the DOE to respond

by February 20, 2022 and provide parent's counsel with:

> [D]ocuments sufficient to show certain information about any services the DOE (a)
> provided or (b) funded through (i) the impartial hearing implementation unit; (ii) RSA
> services actually delivered, and (iii) tuition payments to QSAC, as of December 30, 2019,
> the date that the due process complaint is filed to the date the information is produced.
> The documents should include information sufficient to show the following: (a) date of
> service; (b) time of service; (c) whether the services was provided on an in-person basis
> or a remote basis; (d) length of session; (e) group size; and (f) any progress note.

*See* Interim Order dated January 21, 2022 ("January ~~'22~~22 IO"). Specifically, the IHO directed the

DOE to provide an accounting of the services that had been reflected on the pendency order. ~~The~~

~~January '22 IO is incorporated herein by reference.~~The DOE failed to do so.

~~93.    The DOE failed to do so.~~

~~94.~~93.  Tragically, IHO I passed away before he issued a final decision. IHO ~~II~~II was

assigned on or about October 17, 2022, but that appointment was rescinded on October 19, 2022.

Thereafter IHO III was assigned, and Case No. 184049 was transferred to IHO III.

~~95.~~94.  On or about November 25, 2022, IHO ~~III~~III ordered the DOE to provide the services

accounting to enable N.S. to determine the quantity and nature of the mandated services the DOE

had failed to provide to K.S.

~~96.~~95.  The DOE failed to respond to IHO ~~III~~III's directive.

~~97.~~96.  Between July 1, 2019, and January 25, 2023, when the record was finally closed,

more than 30 hearing dates had occurred.

~~98.~~97.  On or about January 25, 2023, IHO III issued a Findings of Fact and Decision (2023

K.S. FOFD), ruling in favor of Plaintiffs.

~~99.~~98.  Plaintiffs were the prevailing party as a result of the 2023 K.S. FOFD.

100.99.        The Defendants failed to appeal the 2023 K.S. FOFD.

101.100.        During the time that the hearing in Case Number 184049 was pending, Defendants failed to implement the stay-put placement of K.S.

102.101.        In the 2023 K.S. FOFD, the IHO ordered a myriad of relief.

103.102.        Specifically, the IHO ordered the following for K.S.:

(1)        the DOE shall fund, to the extent that it has not already conducted any of these since November 28, 2022 an independent psychological evaluation, Functional Behavioral Assessment, and Behavioral Improvement Plan, to be conducted at the prevailing market rate of N.S.'s duly licensed independent provider(s) of choice capped at the lowest price the DOE's Implementation Unit has paid for substantially similar evaluations/assessments to the same provider(s) during the twelve months preceding the date of this decision, or if it has not paid the same provider(s) within the preceding twelve months, what it has paid for substantially similar evaluations/assessments to a similar provider during the twelve months preceding the date of this decision;

(2)        the CSE shall convene a review meeting within 15 (fifteen) days of the CSE having received all the evaluations/assessments obtained pursuant to (a) and prepare an appropriate IEP for the Student that includes at a minimum:

a.    An accurate present level of academic achievement and functional performance ("PLAAFP");

b.    Specific and measurable goals tailored to K.S. and based on the K.S's current academic and functional levels;

c.    Appropriate modifications and accommodations to be listed

17

as part of K.S.'s IEP program;

    d.   Placement at a nonpublic school for children with autism that offers at least 20 hours per week of 1:1 instruction, ABA, or an equivalent evidence-based instructional strategy, with at least the following supports and services (on a twelve-month school year basis):

        (i) five 30-minute sessions per week of speech/language therapy;

        (ii)    two 30-minute sessions per week of 1:1 occupational therapy;

        (iii)    five 30-minute sessions per week of hearing education services("HES")services;

        (iv)    assistive technology (MAC computer/laptop for keyboarding, iPad with Prologue2Go software) to be used at school and at home;

        (v)    thirty hours per week of home-based ABA provided by private ABA instructors selected by N.S. (at an enhanced rate); and

        (vi)    two hours per week of ABA supervision;

    e.   In the alternative to item (iv), a push-in 1:1 ABA teacher for 25 hours per week at K.S.'s current school; and

    f.   Transportation to and from the school;

    (3)    the DOE shall reimburse N.S. for the cost of the iPad and any apps and programs that N.S. had to purchase because of the failure to implement pendency

18

and provide access to the device within 30 days of receipt of invoices;

(4)      the DOE shall provide and fund a bank of 4095 compensatory hours pursuant to subsections (i) below.

a.    Compensatory services set forth in (1) below are to be provided outside of school hours, during the school year or during the summer, on weekdays weekends, on holidays, or during school vacations, to be provided at the prevailing market rate of N.S.'s duly licensed service provider(s) of choice capped at the lowest price the DOE's Implementation Unit has paid for substantially similar services to the same provider(s) during the twelve months preceding the date of this decision, or if it has not paid the same provider(s)within the preceding twelve months, what it has paid for substantially similar services to a similar provider during the twelve months preceding the date of this decision;

(i) The bank of 4095 compensatory hours awarded set out in (4) of this Order shall not be awarded for each individual service, but may be distributed amongst each of the following services as needed: ABA, ABA supervision, PT, OT, SLT, and HES;

(5)      the DOE shall issue payment directly to providers within 30 (thirty) days upon submission of invoices for services rendered;

(6)      the bank of compensatory services set out in (4) of this Order shall expire upon either of the following occurring: i) K.S. "aging out" and no longer being

19

eligible for special education; or ii) K.S.'s eligibility for special education is subsequently extended beyond the time that K.S. would otherwise have aged-out, then upon the expiration of that extended period, or three years from the date of this Order, whichever occurs first;

(7)     the DOE's implementation unit shall authorize all compensatory services hereby Ordered within 15 (fifteen) days;

(8)     the CSE shall ~~meaning fully~~meaningfully assess K.S.'s post-secondary goals and vocational needs and, after doing so, include this information on the Student's IEP, consistent with State regulation, as part of the IEP being prepared pursuant to the IEP meeting being convened in terms of (2) of this Order.

~~104.~~103.     Defendants did not appeal the 2023 K.S. FOFD, which therefore became final and binding.

~~105.~~104.     Defendants did not implement the  2023 K.S. FOFD.

~~106.~~105.     Defendants did not translate the 2023 K.S. FOFD for the parents.

~~107.~~106.     N.S. filed a new DPC on behalf of K.S. on November 5, 2023. That hearing was designated Case No. 265063.

~~108.~~107.     Upon information and belief, based on the Defendants' lack of adequate policies and practices, Defendants did not implement K.S.'s pendency services to which he was entitled under the 2023 K.S. FOFD.

~~109.~~108.      K.S. went without his pendency services from November 5, 2023 until ~~this week~~late spring 2024.

~~110.~~109.     Further, the IHO issued a pendency decision ~~which N.S. plans to appeal at the conclusion of the case~~ finding that the DOE's obligation was to "fund" K.S.'s ABA

services, while the 2023 K.S. FOFD did not limit the DOE's obligation to "fund" services.  In fact, the Defendants were supposed to place services on an IEP, which it did not do.

~~111.~~110.    As a systemic failure, the DOE fails to timely and adequately include directions from IHO orders to amend and/or incorporate services into student's IEPs.

~~112.~~111.    Even if the Defendants had incorporated the 2023 K.S. FOFD services into K.S.'s IEP – as it was directed to do – since the Defendants do not offer the services, the Defendants would not have been able to provide the services.

~~113.~~112.    Due to the Defendants' delays in failing to include the awarded services on K.S.'s IEP, absent a decision from a federal court, K.S. is scheduled to age out at the end of the 2023-2024 school year, without having received the benefit of the order from the 2023 K.S. FOFD.

113.    ~~K.S. should be entitled to a FAPE up to~~On August 19, 2025, the ~~age~~IHO in Case No. 265063 issued a Findings of ~~twenty-two because New York law~~Fact and ~~Defendants offer free public~~Decision ("2025 K.S. FOFD") awarding compensatory education to ~~students up to the age~~K.S. that must be used within seven years.  Neither party appealed.

114.    N.S. is a prevailing party in Case No. 265063.

~~114.~~115.    K.S. aged out of ~~twenty-two~~his services in June 2025 and has been home without any services since.

**D.D. and A.D.**

~~115.~~116.    A.D. is one of the original M.G. Class plaintiffs who joined the action in the summer of 2013 and obtained an emergency order to implement D.D.'s pendency. She has since had a second child, D.D.1, join the lawsuit.

~~116.~~117.    Like N.S., A.D. has had to file multiple hearings to obtain appropriate services for D.D. and D.D.1 and has also filed previous federal enforcement actions for decisions

of hearing officers that had not been implemented.

117.118.    In August 2016, A.D. filed a due process hearing alleged, among other things, that the DOE denied D.D. a FAPE in the 2017-2018 school year, which the DOE designated Case No. 168204.

118.119.    That year, D.D. was in sixth grade and attending an NPS Program.

119.120.    The hearing officerIHO in Case No. 168204 issued a pendency order directing the DOE to provide the following services during pendency: Placement in the NPS program with speech services (2x30 on a 1:1 basis and 2x30 in a group of 3 in a separate location); counseling (3x60 in a group setting);  Occupational therapy (2x45 on a 1:1 basis) via a Related Service Authorization ("RSA"); Transportation; 12-month extended school year; 25 hours per week of Applied Behavioral Analysis ("ABA") services on an after-school basis funded by the DOE; 7 hours per week of parent training by a Board Certified Behavior Analyst; Assistive technology training and services as per a prior IHO's order in 156310; and testing Accommodations as ordered by the IHO in 156310 and modified by the parties.  In addition, the order directed the DOE and NPS program to ensure that D.D. is administered the statewide English Language Arts and Math exams for the sixth grade during the 2017-2018 school year.

120.121.    The DOE did not submit any evidence, call any witnesses or defend a FAPE.

121.122.    A.D. limited her claim for compensatory education to the missed stay-put services.

122.123.    In September 2019, D.D. started his freshman year at high school, and was only able to make progress because he had the support services provided through litigation.

123.124.    On May 27, 2020, the IHO issued his decision, finding that the DOE denied D.D. a FAPE ("2020 D.D. FOFD").

124.125.    The IHO ordered relief for D.D., directing the DOE to calculate the number of individual services of related services, ABA and AT training that were owed under pendency and create a bank.

125.126.    The DOE created the bank of ABA hours but did not advise the parent if the DOE created a bank of the other services.

126.127.    After the decision, the DOE allowed all D.D.'s support services to lapse.

127.128.    On July 1, 2021, A.D. filed another DPC for D.D. alleging a denial of FAPE and a pendency order was issued, which the DOE violated.

128.129.    That second hearing is still pending for compensatory education relating to pendency.

129.130.    D.D. graduated high school in the spring of 2023.

130.131.    Even though D.D. has graduated, he is still entitled to the full value of any services he was owed under pendency.

**D.D.1  and A.D.**

131.132.    A.D. filed a hearing on behalf of D.D.1 alleging that the Defendants denied D.D.1 a FAPE for the 2016-2017 and 2017-2018 school years.

132.133.    The Defendants designated that hearing Case No. 166273.

133.134.    On January 1, 2022, the impartial hearing officerIHO issued a Findings of Fact and Decision ("2022 D.D. 1 FOFD I") finding that the DOE denied D.D.1 a FAPE for the 2016-2017 and 2017-2018 school years and awarded relief, including banks of compensatory education of ABA, feeding therapy and other related services. The Defendants did not create the banks of hours and provide notice to A.D. as to the amount of compensatory education that it made available to D.D.1.

134.135.    Further, as a result of the 2022 D.D. 1 FOFD I , A.D. was a prevailing party who was entitled to attorney's fees.

135.136.    Due to the Defendants' systemic policies and practices, A.D. was forced to file another hearing on behalf of D.D.1 concerning the remainder of the 2017-2018 school year which post-dated the initial complaint, as well as the 2018-2019 school year.

136.137.    On July 10, 2022 an impartial hearing officerIHO issued a Findings of Fact and Decision ("2022 D.D.1 FOFD II"); although the IHO found that the issue of FAPE for the 2018-2019 school year was moot, he found that A.D.'s claims that the Defendants had failed to implement the interim order issued by the hearing officerIHO and D.D.1's pendency was not moot. He ordered the Defendants to calculate a compensatory bank and authorize the funding for services.

137.138.    The DOE has not timely and accurately calculated and provided notice to A.D. as to the amount of compensatory education available to D.D.1

138.139.    Further, as a result of the 2022 D.D.1 FOFD II, A.D. was a prevailing party who was entitled to attorney's fees.

139.140.    A.D. was then forced to file yet another hearing concerning D.D.1, alleging that the Defendants denied D.D.1 a FAPE for the 2020-2021, 2021-2022 and 2022-2023 school years, which the Defendants designated as Case No. 229432.

140.141.    During the past few years, Defendants have adopted a policy pursuant to which they refuse to implement pendency and/or hearing decisions, and when and/or if a parent obtains private services which Defendants agree to fund through their Impartial Hearing Implementation Unit, they then argue that students are not entitled to compensatory education for any missed pendency services.

141.142.    Further, Defendants are now taking the position that parents, like A.D., have assumed the responsibility for implementing their children's own pendency or final orders.

142.143.    ~~As.~~ A.D. has been a plaintiff in a related class action suit trying to change the Defendants' policies and practices concerning provision of off-menu services, such as ABA, extended school day services and 1:1 instruction, she objected to this policy.

143.144.    Accordingly, as relief in the hearing in Case No. 229432, ~~she~~A.D. requested, and the ~~hearing officer~~IHO granted~~,~~ relief which clarified that it was the Defendants – and not A.D. – who would be responsible for implementation of D.D.1's services.

144.145.    On April 12, 2023, the ~~hearing officer~~IHO in Case No. 229432 issued the Findings of Fact and Decision (the "2023 D.D.1 FOFD").

145.146.    In addition to compensatory education of ABA, feeding therapy and related services, the IHO in Case No. 229432 directed the DOE to provide the following services for the 2022-2023 school year:

a. Placement in a Non-Public School, in a 6:1:3 classroom, with the following 12-month school year program;

    i. 1:1 Speech and language therapy ("SLT"), 5 times per week for 30 minutes in-school;

    ii. Feeding goals will be worked on in school;

    iii. Specialized transportation consisting of an air-conditioned mini bus equipped with a car seat, and limited travel time of 30 minutes per way;

    iv. 1:1 bus aide trained in ABA and able to safely manage the student's maladaptive behaviors on the bus;

     v.     On the days that the bus aide is not available, the District shall allow the student on the bus at the Parent's request and may not prevent the student from riding the bus due to the District's failure to implement this order or absence of the aide;

    vi.     At the Parent's election, the District will prospectively fund, and satisfy the parent's debt for car service/rideshare for the father or other family member to transport the child to minimize the risk of injury to the father and/or student;

b.  The District should provide the following services for a 52-week extended school year basis:

     i.     1:1 SLT, 2 times per week for 60 minutes each session;

    ii.     Occupational Therapy ("OT"), 2 times per week for 45 minutes each session;

   iii.     Physical Therapy ("PT"), 2 times per week for 45 minutes each session;

    iv.     Parent Training 2 hours per week;

     v.     Supervision by a BCBA/LBA for 2 hours per week;

    vi.     20 hours per week of ABA/Special Education Teacher Services by an LBA, BCBA, SEIT or a special education teacher who is trained in ABA;

   vii.     All of the above services may be used after-school, on the weekends, on holidays, at home and/or in the community, on a 52 week, 12-month basis;

c.  The District is responsible for implementing the services;

d.  With respect to services in (b) the District should issue RSAs for OT, PT, and SLT. Further, if Eden II cannot fulfill its speech mandate, RSAs should be issued;

e.  In addition, the District should locate appropriate OT, PT, and SLT providers who accept RSAs, who work for the District, or who will accept direct payment, as long as those providers are available and qualified to provide the services;

f.  If the parent locates a provider who accepts direct funding before an RSA or District provider is located by the District or the Parent, the District will provide direct funding for the services;

g.  Any gap between mandated services under the order and services the child actually receives as of June 30, 2023 under the order will be banked for compensatory education for the child to use in the future; and

h.  Any reimbursement or direct pay rates to be paid by the Impartial Hearing Implementation Unit ("IHIU") will be set at prevailing market rates paid by the unit to the provider or for comparable services to comparable providers except as otherwise provided for in this order. In addition, the District shall pay 9 percent compounded monthly interest for invoices not paid within thirty days of receipt.

~~146.~~147.    The Defendants did not appeal the 2023 D.D.1 FOFD.

~~147.~~148.    However, Defendants did not timely or appropriately implement the 2023 D.D. 1 FOFD.

~~148.~~149.    D.D.1's feeding issues are severe, and he was unable to eat solid foods; instead, he drank multiple Pediasures and yogurt. Further, D.D.1 had been experiencing severe behavioral outbursts for several years, which were aggressive in nature as well as self-harming.

~~149.~~150.    D.D.1 had been ordered to receive but had not received feeding therapy since A.D. first filed her hearing because (a) the Defendants have a policy pursuant to which they did not offer and/or did not have feeding therapy; (b) Defendants do not evaluate children for the

need for feeding therapy; and (c) as a result, there is a shortage of feeding therapists on Staten Island.

~~150.~~151.      Finally for the 2023-2024 school year, A.D. found a feeding program at a hospital in New Jersey, that also provided ABA.  Since the Defendants do not provide feeding therapy, in order to use the compensatory feeding hours, A.D. had to remove D.D.1 from school and enroll him in the feeding and severe behavior ABA programs at the hospital.

~~151.~~152.      For the 2023-2024 school year, the DOE held an IEP meeting but never issued an IEP or placement to D.D.1.

~~152.~~153.      D.D.1 remained in those programs for the 2023-2024 school year up and through early March 2023.

~~153.~~154.      Due to the Defendants' illegal policies and practices, despite the above history and the orders of hearing officers, A.D. had to file yet another due process complaint in order to keep D.D.1's services in place.

~~154.~~155.      Thus, she filed a new DPC on July 1, 2023, which the DOE designated Case No. 249892.  ~~To date, D.D.1 does not have a pendency agreement with the Defendants and the hearing officer has not issued a pendency order.~~

~~155.~~156.      ~~The DOE has already admitted that~~A.D. amended her complaint in Case No. 249893 to cover the ~~DOE did not offer a FAPE to D.D.1 for the 2023~~2024-2025 school year.

~~156.      The 2023-2024 school year makes~~During the hearing, the ~~sixth admitted year, and the 8th actual year that the Defendants have denied a FAPE to D.D.1.~~

157.      ~~The parties have a dispute because notwithstanding the efforts that A.D. made to try to clarify that the Defendants remain responsible for implementing D.D.1's services,  the DOE will~~DOE would  not agree to incorporate the terms of the 2023 D.D.1 FOFD into the pendency

order, as they ~~claim~~claimed those provisions relate to "implementation" of pendency and not to pendency itself.

158.    ~~The~~ On April 21, 2024, the IHO ~~has heard arguments concerning~~ in Case No. 249893 issued a pendency ~~but, to date, has not issued an~~ order.

~~159.    D.D.1 has been allowed to return to Eden II, but his extended day ABA providers are unable to bill for services, since the issue of pendency is outstanding.~~

159.    ~~Further, Defendants have~~ The DOE failed to implement many aspects of D.D.1's pendency during the almost two years that Case No. 249893 was pending.

160.    The DOE failed to implement any of D.D.1's extended-day related services required under pendency.

161.    The DOE failed to implement any of D.D.1's transportation services.

162.    On October 25, 2024, the IHO in Case No. 249893 issued a Findings of Fact and Decision ("2024 D.D.1 FOFD"), finding that the DOE had failed to offer a FAPE to D.D.1 for the 2023-2024 school year.

163.    The 2024 D.D.1 FOFD ordered compensatory education for D.D.1

164.    The 2024 D.D. 1 FOFD included a finding as to what the appropriate program was for D.D.1 for the 2023-2024 school year.

165.    On June 17, 2025, A.D. filed yet another hearing, alleging that the DOE denied D.D.1 a FAPE for the 2024-2025 SY, and then amended that DPC to include allegations that the DOE did not offer a FAPE to D.D.1 for the 2025-2026 school year.  That current hearing is designated Case No. 296657.

166.    The DOE issued a Pendency Document in Case No. 296657, a redacted copy of which is attached hereto as Exhibit A.

167.    Under 20 U.S.C. § 1415(j), D.D.1 is entitled to have the DOE to implement services listed on the Pendency Document, including but not limited to, education at Eden II, and extended day services of ABA, parent training, SLT and OT, as well as very specific transportation accommodations.

168.    Those accommodations include a harness, limited travel time, as well as a trained paraprofessional who can manage D.D.1's severely maladaptive behaviors during travel.

169.    The DOE has not implemented ~~transportation for D.D.1, as per usual. For the past several years,~~ D.D.1's extended day SLT or OT services, mandated under pendency during the 2025-2026 school year.

170.    Further, since the hearing in Case No. has been filed the DOE has not provided D.D.1 with any transportation.

171.    D.D.1 has severely maladaptive behaviors, which often require his parents to don motorcycle helmets and martial arts padding to deal with him in situations where there is a likely to be a behavior in the home.

172.    During travel to and from school, D.D.1's behavior has historically been dangerous, including getting out of his seat, aggression toward others and slamming his head on the window.

~~160.~~173.    The Defendants have ~~not been able to (a) appropriately and reliably staff a paraprofessional trained~~ never taken any steps prior to the 2025-2026 school year to address ~~severe behaviors on the bus; or (b) implement D.D.1's limited travel time.~~ the transportation problems or to comply with the 2023 D.D.1 FOFD which directed the DOE to conduct certain transportation assessments.

~~161.~~174.    As such, D.D.1's father has not been able to work a full-time job, as he has had to be responsible for transporting D.D.1 to and from school.

175.    This year, however, he has to return to work.

176.    D.D.1's father works nights, and it is dangerous for him to stay up all night, and not get sufficient sleep, drive D.D.1 to and from school, and then pick him up in the evening.

177.    This fall, only after being threatened with emergency relief in Court, the DOE finally sent OPT to measure D.D.1 for a harness and ordered it.

178.    Further, over the past week, tried to contract with a private evaluation company to conduct a transportation evaluation, which had also been ordered by the 2023 D.D.1 FOFD.

179.    While the DOE is, belatedly making some steps to try to comply with their obligations, the DOE has not been able to locate a trained paraprofessional to ride with D.D.1.

180.    In prior years, the DOE has not implemented the travel accommodations but has at least issued vouchers for D.D.1's father to use rideshare.

181.    However, this year, the DOE has not yet agreed to implement any alternative.

182.    Plaintiffs have provided notice to Defendants that they may seek emergency relief if this was not resolved.

**Defendants Violated and Continue to Violate Plaintiffs' Pendency Rights**

~~162.~~183.    The IDEA requires that a child "stay put" in his or her last agreed upon placement when a DPC is filed.  20 U.S.C. § 1415(j).

~~163.~~184.    Pendency rights are supposed to be automatic and unconditional; they attach when a parent files for due process.

~~164.~~185.    A student's "stay-put" rights ("pendency") can be changed by agreement between the parties, or by a final, unappealed order of an IHO, SRO, or court.

~~165.~~186.    An unappealed order constitutes an agreement between a parent and the DOE.

166.187.	Defendants do not have policies and procedures in place to ensure that students' pendency rights are timely implemented such that the intended purpose of pendency is served.

167.188.	The Defendants violated the stay-put placement for D.D., D.D.1 and K.S. repeatedly, over a period of years with respect to the Autism Services (defined in the M.G. class action), as well as their other services.

168.189.	The Defendants have also adopted improper policies and failed to adopt appropriate policies to ensure pendency services are implemented, particularly for children, like K.S. and D.D.1, who are entitled to receive services that the Defendants do not offer on their Continuum of Special Education services, such as ABA, extended day services, 1:1 instruction, related services at a Nonpublic school, feeding therapy and appropriate transportation.

**Defendants Did Not Timely Implement the SRO Decision for K.S. and Does Not Have a Centralized Office Charged With Timely Implementing SRO Decisions**

169.190.	The DOE did not implement the SRO Decision on K.S.'s behalf.

170.191.	The DOE was ordered to create a bank of hours.

171.192.	The DOE did not create that bank or, if it did, it did not communicate the bank of hours to the parent or take any steps to implement the bank.

172.193.	The DOE's failure to implement the SRO decision is part and parcel of the DOE's failure to have any centralized system and/or tracking process for SRO decisions.

173.194.	The DOE uses its Impartial Hearing Implementation Unit ("IHIU") to implement orders. This unit is being monitored and revised under a class action case.

174.195.	The DOE does not have a system for centralized tracking, monitoring and implementing SRO Decisions or addressing relief in those decision.

175.196.        The DOE uses its office of Nonpublic School Payables to reimburse parents or pay private providers ordered after an SRO decision. This office does not have responsibility for implementing the relief directing the DOE to take affirmative steps.

176.197.        In fact, the DOE has failed to identify any individual(s) responsible for implementing relief ordered by the scores of SRO decisions that are issued in New York City.

**Defendants Did Not Timely Implement the Final Hearing Decisions**

177.198.        The DOE did not adequately or timely implement the administrative decisions issued on behalf of K.S., D.D. or D.D. 1

178.199.        Upon information and belief, the DOE has not timely implemented the provisions of the 2023 K.S. FOFD, such as reimbursing the parent, convening an IEP team meeting, and  implementing the education program, or the services ordered therein.

179.200.        Moreover, given K.S.'s age, and the extent of compensatory services bank of hours, and the systemic shortage of providers in New York City and in the area in which K.S. lives, created and exacerbated by the actions, policies, practices and inactions of the Defendants in the M.G. case, N.S. will is likelyit was not possible for K.S. to utilize all the services to which K.S. is entitled to within the time frame permitted by the 2023 K.S. FOFD.

180.201.        Upon information and believe, the DOE did not timely implement the 2020 D.D. FOFD on behalf of D.D.

181.202.        Part of the DOE's obligation to implement the 2020 D.D. FOFD involved calculating the number of hours owed under the 2020 D.D. FOFD, creating a bank and notifying the parent of what was awarded.

182.203.        The DOE either did not calculate and create the other banks of services, or never notified the parents of the creation of the banks and the number of hours the DOE has

authorized.

~~183.~~204.    Upon information and belief, the Defendants did not timely and/or appropriately implement the 2022 D.D.1 FOFD I, the 2022 ~~FOFD II~~D.D.1 FOFD II or the 2023 D.D.1 FOFD.

**The Defendants Have Failed to Provide and/or Keep Terminating Plaintiffs' Services**

~~184.~~205.    The DOE does not recommend 1:1 instruction on an IEP for a child with autism who is recommended for another program, such as an ICT, special class, or private school unless those services are obtained through a due process proceeding or a court order ("via Litigation").

~~185.~~206.    The DOE does not recommend ABA on an IEP for a child with Autism unless those services are obtained via Litigation.

~~186.~~207.    The DOE does not recommend after school special education and related services on ~~an on an IEP~~IEPs for ~~a child~~children with Autism unless those services are obtained via Litigation ~~or provided through vouchers called RSAs or P-4s, if the DOE is unable to implement an in-school IEP recommendation~~.

~~187.~~208.    The DOE does not recommend home-based special education and related services on an IEP for a school-age child with Autism who is also recommended for a school-based program unless those services are obtained via Litigation.

~~188.~~209.    If the DOE is recommending a specific NPS program, the DOE's IEP teams cannot recommend any special education or related services for a child with Autism unless the particular NPS program can provide the services, unless those services are obtained via Litigation.

~~189.~~210.    New York State Education Department (NYSED) has instructed that State-approved non-public schools should not accept a student unless the school can provide all of the services recommended on the student's IEP.

~~190.~~211.    Unless the New York State Education Department ("NYSED") grants an exception, the DOE cannot fund or provide special education or related services for K.S. outside of the services that are available at K.S's NPS Program, unless the services are obtained via Litigation.

~~191.~~212.    The following services could not have been recommended on Plaintiffs' IEPs and cannot be recommended on K.S.'s IEP going forward, absent an order or settlement obtained via Litigation:

a.    1.1 instruction by a teacher during the school day;

b.    ABA;

c.    Home-based special education services;

d.    Home-based related services;

e.    After-school special education and/or related services;

f.    Coordination by a Board-Certified Behavior Analyst ("BCBA"); and

g.    Supervision by a BCBA.

213.    The DOE has admitted the following in the M.G. Class Action (in which this Parent and student are class members): (a) the DOE's IEP teams cannot (and do not) offer ABA or extended day services on an IEP; (b) the DOE has admitted that the only 1:1 instruction available on an IEP is 1:1 SETSS, which is only available only for academic intervention; and (c) the DOE also cannot offer home-based instruction on an IEP unless it is for a child who is physically unable to attend school.

214.     The DOE predetermines the outcomes of the meeting due to the limited options for services available and the policies and practices imposed on the IEP process.  As such, every IEP for D.D.1 – and all other children who require Autism Services, are denied a legally valid IEP, as the Courts have defined "predetermination" to be a serious procedural violation of the IDEA that results in a denial of a FAPE.

215.     Further, The DOE knows there is a shortage of ABA providers in Staten Island but does nothing to try to address the shortage even though they cannot meet the demand of orders directing ABA to be provided.

216.

217.     The DOE knows there is a shortage of  related services providers in Staten Island but does nothing to try to address the shortage even though they cannot meet the demand of orders directing ABA to be provided.

218.

219.     In addition, the DOE's IEP teams are constrained because they cannot recommend any services for D.D. that are not offered at an NPS program.  The SRO has already held that the teams in Staten Island violate a child's right by applying this policy, but the policy continues to be applied.

192.220.     Defendants did not and do not conduct evaluations to assess children for the need for the Autism Services, cannot recommend them without an order and even if the services are recommended with an order, the DOE refuses to provide them directly, forcing parents like N.A. and A.D. to try to find them in their respective neighborhoods in which there are shortage areas of providers who can agree to accept payment from the DOE.

193.221.    Plaintiffs have been subject to the described policies and practices of Defendants.

194.222.    Defendants' policies and practices violate the IDEA and Section 504 as well as other provisions of law.

195.223.    There is no remedy through the administrative process to address the claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying systemic policies and practices to K.S.

196.224.    Further, because K.S. attendsattended an NPS program, the Defendants arewere not permitted to recommend any special education services on K.S.'s IEP that the NPS program doesdid not offer.

197.    If K.S.'s IEP were to contain any services that the NPS program does not offer, the NPS would be required to advise Defendants that it was no longer able to serve K.S. and K.S.'s IEP would need to be deferred to Defendants' Central Based Support Team.

**Plaintiffs Require A Court Order to Obtain Their Equitable Rights and Remedies**

198.225.    Defendants have failed to ensure the delivery of the services required by pendency, due in part to (a) a shortage of providers; (b) Defendants' refusal to offer certain services directly; (c) Defendants' refusal to pay providers that accept its vouchers on a timely basis or at a market rate; and (d) Defendants improper policies and procedures concerning pendency.

199.226.    Defendants do not offer certain services an IEP meetings, such as ABA, extended day or after-school services, 1:1 instruction, home-based services or feeding therapy.

200.227.    Even when students like D.D., D.D.1 and K.S. win these services at hearings, and are later entitled to the services under pendency, the Defendants do not provide the services.

201.228.        Instead, parents like N.S. and A.D. are forced to either go without services, constantly file federal lawsuits (which, regardless do not produce the required providers) or look for a small number of private providers who will accept delayed payments from Defendants.

202.229.        Further, there are shortages of certain services in the areas where these plaintiff families live.

203.230.        There are shortages of ABA providers available to implement pendency and orders in Staten Island and Whitestone.

204.231.        The DOE does not employ and/or contract with providers who can deliver the ABA services and after-school parent training ordered by the FOFD or as necessitated to provide pendency.

205.232.        Moreover, the ABA services at issue and that constitute part of D.D.1 and K.S.'s stay-put placements are not offered at the NPS Program.

206.233.        Currently, there are more individuals who have impartial hearing orders, resolution agreements, and settlement agreements that call for and/or require the provision of ABA than there are qualified ABA providers.

207.234.        Defendants did not employ and/or contract with providers who can deliver the ABA services to which Plaintiffs were and are entitled.

208.235.        The Defendants have failed to ensure the delivery of certain services due to the shortage of ABA providers generally as well as Defendants' refusal to offer certain services directly.

209.236.        Defendants have failed to ensure that there are sufficient numbers of providers to deliver  related services, such as hearing education services ("HES,") physical therapy ("PT"), speech and language therapy ("SLT") and occupational therapy ("OT") in Queens and in

Staten Island.

210.237.    Defendants use Related Service Authorizations ("RSAs"), which are vouchers that parents can use to obtain services when they are required to implement related services under pendency.

211.238.    However, issuance of RSAs does not fulfill Defendants' obligation to implement pendency.

212.239.    Further, there are an insufficient number of RSA providers who are available to deliver HES, SLT, OT, and PT to meet the need within the Whitestone area, where Plaintiff K.S. lives.

213.240.    Similarly, there are an insufficient number of RSA providers who are available to deliver HES, SLT, OT, and PT to meet the need in Staten Island, where Plaintiff D.D.1 lives.

214.241.    Due to the delays in paying on RSAs and the low rates offered to providers, Defendants' RSA procedures is an inadequate way of implementing pendency for Plaintiffs.

215.242.    Furthermore, with respect to D.D.1, for years, D.D.1 has been entitled to feeding therapy. The DOE does not have feeding evaluations, does not offer feeding therapy on IEPs and does not have feeding therapy available even when such services are ordered in a hearing or part of a student's pendency.

216.243.    Additionally, with respect to D.D.1, for years, he has been entitled to a trained travel paraprofessional and limited travel time. Yet, Defendants do not have appropriately trained, reliable and/or available paraprofessional for children like D.D.1, who have severe behavioral issues and require assistance on the bus.

217.244.    Furthermore, the Defendants do not utilize the IEP process for

transportation accommodations; they do not evaluate children for transportation accommodations, they do not have harnesses and/or other devices available, and the Defendants do not have a transportation expert on staff to assess cases like D.D.1, of which there are a growing number, who have extremely challenges safely riding a school bus. Instead, the Defendants force parents like A.D. to get their own evaluations and apply on an annual basis for travel accommodations, which are then never timely implemented.

218.245.    Additionally, Defendants enter into contracts with NPS Programs, such as the ones attended by K.S. and D.D.1, to service children that they cannot serve in public schools.

219.246.    Yet, Defendants have no way of monitoring implementation of IEPs or pendency at NPS programs because Defendants have not required NPS Programs to report related service attendance in real time on any database.

220.247.    Moreover, Defendants force parents like K.S. and A.D. to continually litigate on behalf of their children because they restrict IEP team recommendations for children attending NPS programs to the services available in those programs, despite the fact that the Defendants could use other funds to supplement the services at the NPS Programs if they so choose.

221.248.    The law permits parents to receive funding for educational service providers who do not meet state credentials or approval as a remedy for a denial of FAPE.

222.249.    Plaintiffs are the prevailing parties and are entitled to an award of attorneys' fees for work performed in connection with the underlying due process hearing, the appeal, and this action.

223.250.    Further, the Defendants should pay the attorneys' fees owed to Plaintiffs' counsel in connection with the impartial hearings and this action.

224.251.        The fees and costs charged by Plaintiffs' counsel are consistent with and/or below market rates for the legal services performed, in light of counsels' experience and expertise and the complexity of the issues.

**The Statute of Limitations Does Not Bar Any of Plaintiff's Claims**

225.252.        Governor Andrew Cuomo tolled the statute of limitations for all New York statutes as a result of the COVID pandemic.

226.253.        Executive Order 202.08 dated March 20, 2020, provided that any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order.

227.254.        Multiple Executive Orders continued the suspensions and modifications of law through November 3, 2020, ultimately tolling the statute of limitations for a total of 228 days.

228.255.        Courts adopt the three-year statute of limitations in N.Y. Civ. P.L. § 214(2) for IDEA attorney's fees claims, as the IDEA does not include a limitations period for filing such claims. *Robert D. v. Sobel*, 688 F. Supp. 861 (S.D.N.Y. 1988).

229.256.        As federal Courts adopt state limitations periods, New York State tolling rules apply. *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980).

230.257.        Accordingly, the applicable statute of limitations in New York relating to attorney's fees and all other claims that may have had a three-year statute of limitations due to the date on which the impartial hearing decision in this case was issued were tolled by the New York State Governor until November 4, 2023.

231.258.        Since November 4, 2023 fell on a weekend, the statute of limitation falls

on the next business day, which is Monday, November 6, 2023.

~~232.~~259.        Plaintiffs tried to file this action on November 3, 2023, and then, again, on November 4, 2023, but the payment system for the SDNY was not working even though the notice on the SDNY website indicated that the payment system would not be unavailable until 4 p.m. on November 4, 2023.

CLAIMS
FIRST CLAIM
SECTION 504 OF THE REHABILITATION ACT

~~233.~~260.        Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

~~234.~~261.        Defendants' conduct is knowing, intentional, reckless, and gross.

~~235.~~262.        Defendants denied K.S., D.D., and D.D.1 a FAPE under Section 504 for all of the school years at issue.

~~236.~~263.        Defendants discriminated against K.S. and D.D.1 under Section 504 by, *inter alia*, denying them reasonable accommodations, adopting systemic policies, procedures, and practices that violated their rights under the IDEA and engaging in widespread violations of the IDEA.

~~237.~~264.        Furthermore, Defendants' discriminatory conduct and actions are the product of extensive, repeated, gross, knowing, violations of the IDEA and constitute bad faith and of deliberate or reckless indifference to the students' federally protected rights.

~~238.~~265.        Defendants have acted with "bad faith or gross misjudgment."

CLAIM II
The IDEA
~~SECOND CLAIM~~

~~239.~~266.        Plaintiffs repeat and re-allege the allegations of all the above paragraphs

42

as if fully set forth herein.

267. Defendants denied D.D., D.D.1 and K.S. a FAPE for multiple years in a row.

268. Defendants consistently implemented and implement illegal policies and practices pursuant to which IEP meetings are predetermined.

269. Defendants continue to subject D.D.1 to the policies and practices which continue to threaten the stability of his program and placement.

270. Defendants failed to implement the stay-put rights of K.S.

271. Defendants failed to implement and are currently failing to implement D.D.1's stay-put rights.

240.272. Defendants did not timely implement the relief in the SRO decision and the 2023 K.S. Decision on behalf of K.S.

241.273. Defendants did not timely implement the relief in the 2020 Decision on behalf of D.D.

242.274. Defendants did not timely implement the relief in the 2022 D.D.1 FOFD I, 2022 D.D.1 FOFD 2 andII, the 2023 D.D.1 FOFD on behalf of D.D.1 and the 2024 D.D.1 FOFD.

243.275. During the years at issue, Defendants denied K.S., D.D. and D.D.1 a FAPE, failed to implement the due process provisions of the IDEA, and systemically failed to ensure that there are qualified staff available to implement the pendency and orders of the SRO and administrative hearing officers.

244. Defendants failed to implement Plaintiffs' stay-put rights under the IDEA.

245.276. Plaintiffs have exhausted the administrative procedures for each of the school years alleged herein to the extent required by law.

246.277.    Defendants failed to adopt policies and procedures sufficient to ensure timely implementation of Plaintiffs' pendency rights.

247.278.    Defendants failed to adopt policies and procedures sufficient to ensure timely implementation of SRO Decisions.

248.279.    Defendants failed to ensure that the DOE offered the "off-menu" services that Plaintiff parents, N.S. and A.D. have had to litigate to obtain and then keep in place, year after year, even in the face of repeated FAPE deprivations.

249.280.    Defendants denied Plaintiffs their due process rights under the IDEA.

250.281.    Defendants' application of blanket policies and practices violates the IDEA.

251.282.    As the prevailing party, Plaintiffsparties in all of the administrative proceedings, A.D. and K.S. should be awarded payment of reasonable legal fees for the work performed in connection with the proceedings described herein, including implementation of the decisions, together with prejudgment interest.

THIRD CLAIM
42 U.S.C. § 1983

252.283.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

253.284.    Defendants have violated 42 U.S.C. § 1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

254.285.    By failing to implement the decisionsFOFDs and orders described herein, Defendants violated 42 U.S.C. § 1983.

255.286.    By implementing, promulgating, and continuing to enforce and/or

effectuate policies, practices, and customs as alleged herein, Defendants have denied Plaintiffs

D.D., D.D.1 and K.S. ("Plaintiff Students") educational services to which ~~she is~~they are entitled

under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

~~256.~~287.    By failing to supervise and train their employees and agents concerning

due process and the laws and policies that protect Plaintiffs' rights under the IDEA and New

York State Education law, Defendants have violated 42 U.S.C. § 1983.

~~257.~~288.    The Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 by

failing to have adequate policies, procedures, protocols, and training to ensure that the provisions

of the IDEA and Section 504 referenced herein were complied with, which deprived ~~K.S. of his~~

~~right~~Plaintiff Students of their rights to a free appropriate public education under federal and

state law.

~~258.~~289.    Under color of state law, the Defendants deprived Plaintiff students of

their right to educational services afforded to them under the IDEA and New York State law, in

violation of the Fourteenth Amendment of the U.S. Constitution.

~~259.~~290.    As a direct and proximate result of the Defendants' misconduct, Plaintiff

~~children~~Students suffered and continue to suffer harm, which will continue unless Defendants

are enjoined from their unlawful conduct.

<u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that the Court:

i.    Assume jurisdiction over this action;

ii.    Issue a preliminary injunction directing Defendants to implement D.D.1's

pendency program, including ensuring that Defendants remain responsible for

such implementation and to fund rideshare for his father while transportation is

not being provided;

ii.iii.      Issue a declaratory judgment on behalf of Plaintiffs that Defendants have violated Plaintiffs' rights as alleged herein in violations of applicable federal and state laws.;

iii.iv.      For Plaintiff D.D., issue a permanent injunction directing Defendants (a) to implement the 2020 FOFD by creating the compensatory banks; (b) award equitable relief for the violation of pendency (c) create an appropriate compensatory award *in lieu* of services not implemented while D.D. while in middle and high school; (d) place funds in escrow sufficient to ensure that there are staff available to implement the services as ordered; (e ) award additional equitable relief to remedy the failure to implement the FOFD and/or SRO decision as applicable.;

iv.v.      IssueFor Plaintiff D.D.1, issue a permanent injunction directing Defendants (a) to implement the 2022 D.D.1 FOFD I, the 2022 D.D.1 FOFD II, the 2023 D.D.1 FOFD and the 20232024 D.D.1 FOFD; (b) place funds in escrow sufficient to ensure that there are staff available to implement the services as ordered; (c) arrange for the implementation of services delivery of services to staffwith who are proficient in the services under the Court's equitable powers if certified providers are not located; and (d) award additional equitable relief to remedy the failures alleged herein.;

v.vi.      IssueFor K.S., issue a permanent injunction directing Defendants (a) to implement the 2023 K.S. FOFD; (b) implement the SRO Decision; (c) extend N.S.'s time to receive the compensatory education ordered in the 2023 K.S. FOFD; (d) place

funds in escrow sufficient to ensure that there are staff available to implement the services as ordered; (e) arrange for the implementation of services ~~delivery of services to staff~~ with providers who are proficient in the areas of services ~~under the Court's equitable powers~~that were ordered if certified providers are not located; (f) arrange for transportation (if needed) and ~~(f~~ (g) award additional equitable relief to remedy the failures alleged herein~~.~~;

vi.    ~~Issue a preliminary injunction directing Defendants to implement D.D.1's pendency program, including ensuring that Defendants remain responsible for such implementation.~~

vii.    Issue a preliminary injunction directing the Defendants to allow K.S. to have (a) at least one year of extended eligibility pursuant to which he can receive the services that were ordered in the 2023 K.S. FOFD and (b) one additional year of extended eligibility as a result of an entitlement to FAPE up to the age of twenty-two~~.~~;

viii.    Issue a permanent injunction directing Defendants to cease implementation of the policies and practices alleged herein that violate the IDEA and Section 504~~.~~;

ix.    Award Plaintiff N.S. reasonable attorneys' fees and costs in accordance with his status as the prevailing party in the underlying administrative proceedings that resulted in the SRO Decision, the 2023 K.S. FOFD and the ~~2023~~2025 K.S. FOFD;

x.    Award Plaintiff A.D. reasonable attorneys' fees and costs in accordance with his status as the prevailing party in the underlying administrative proceedings that resulted in the 2020 ~~FOFD:~~D.D. FOFD, the 2022 D.D.1 FOFD I, the 2022 D.D.1 FOFD II, the 2023 D.D.1 FOFD and the 2024 D.D.1 FOFD;

xi.    Award Plaintiff reasonable attorneys' fees and costs incurred in connection with

this action; and

xii.    Award such other, and further, relief as to the Court may seem just and proper.


Dated:   ~~April 26, 2024~~October 6, 2025
             New York, NY

                                    Respectfully submitted,

                            THE LAW OFFICE OF ELISAHYMAN, P.C.

                                    /s/ Elisa Hyman

                            By_____
                            Elisa Hyman, Esq. (EH4709)
                            The Law Office of Elisa Hyman
                            1115 Broadway, 12th Floor
                            New York, NY 10010
                            Phone: (646) 572-9054
                            Fax: 646-572-9055
                            ~~elisahyman@gmail.com~~elisahyman@gmail.
                            com