UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| N.S., *et al.,* <br><br><br> Plaintiffs, <br><br> vs. <br><br> NEW YORK CITY DEPARTMENT OF EDUCATION, *et al.*, <br><br><br> Defendants. | Civ. No. 23-cv-9786 (SHS)(RWL) |

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION**

Elisa Hyman, Esq.
THE LAW OFFICE OF ELISA HYMAN, P.C.
1115 Broadway, 12th Floor
New York, NY 10010
(646) 572-9064
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. STATEMENT OF FACTS ...................................................................................................... 1

    A.     D.D.'s Disability and Need for Intensive, Highly Structured Services. ...................... 1

    B.     D.D.'s Longstanding Placement at Eden II and Pendency Program…………………..1

    C.     The DOE's Failure to Implement Pendency ABA Services………………………….2

    D.     The DOE's Failure to Provide Pendency Speech and Language Therapy…………...3

    E.     The DOE's Failure to Implement Required Transportation Accommodations. .......... 4

    F.     Ongoing Harm and Urgency of Relief………………………………………..……...5

III. ARGUMENT ........................................................................................................................... 5

    A.     Plaintiffs are Entitled to an Injunction Under § 1415(j) of the IDEA. ....................... 5

    B.     Plaintiffs Also Satisfy the Traditional Test for a Preliminary Injunction…………....8

          1.    Plaintiffs are Suffering and Will Continue to Suffer Irreparable Harm................. 9

          2.    Plaintiffs Have Established a Clear or Substantial Likelihood of Success. .......... 10

IV. CONCLUSION ...................................................................................................................... 11

I. **PRELIMINARY STATEMENT**

This motion for preliminary injunction is being filed by A.D. on behalf of herself and her child, D.D., to seek implementation of aspects of D.D.'s services that he is entitled to receive under the IDEA's stay-put provision, 20 U.S.C. § 1415(j) ("Pendency"). Defendants are the New York City ("NYC") Department of Education ("DOE"), The Board of Education of the New York City School District of the City of New York, the Chancellor of the New York City School District, and the City of New York (collectively "DOE or "Defendants").

II. **STATEMENT OF FACTS**

The facts set forth below are drawn from the Declaration of A.D., dated December 13, 2025, attached hereto as Exhibit ("Ex.") K to the Declaration of Elisa Hyman dated December 13, 2025 ("Hyman Decl.")[1], and are limited to those facts necessary to establish D.D.'s pendency placement and the DOE's ongoing failure to implement critical components of that placement.

A. **D.D.'s Disability and Need for Intensive, Highly Structured Services**

D.D. is a twelve-year-old child with severe autism whose disability profoundly affects his communication, behavior regulation, and ability to safely access education and related services. A.D. Decl. ¶¶ 2–7. D.D. engages in extreme aggression and self-injurious behaviors, including head banging, biting, hitting, scratching, property destruction, and violent outbursts that often require physical restraint to prevent serious injury. *Id*. ¶¶ 7–9, 83–92. Due to his size and strength, these behaviors pose a serious risk to himself, his parents, and service providers. *Id*. ¶¶ 6–9.

B. **D.D.'s Longstanding Placement at Eden II and Pendency Program**

For nearly a decade, D.D. has been placed at Eden II Programs, a New York State–approved non-public school that provides an intensive ABA-based program. A.D. Decl. ¶¶ 10–13,

---

[1] All references to "Ex." will refer to exhibits attached to the Hyman Declaration.

1

56–58. D.D. has attended Eden II continuously since preschool, except for a temporary placement at the RUCARES Severe Behavior Program when his behaviors escalated to life-threatening levels. *Id*. ¶¶ 118–134.

D.D.'s current pendency placement is defined by an unappealed impartial hearing officer decision issued in October 2024, together with the services being implemented pursuant to prior IHO orders. A.D. Decl. ¶¶ 173–179. Under pendency, D.D. is entitled to:

   a. Placement at Eden II in a 6:1:3 classroom;

   b. A full-time, 1:1 trained paraprofessional in school;

   c. Twenty (20) hours per week of extended-day, home-based ABA services supervised by a BCBA;

   d. Parent training and BCBA supervision;

   e. Extended-day related services, including speech and language therapy and occupational therapy;

   f. Home-based speech and language therapy;

   g. Specialized transportation with a maximum travel time of thirty minutes;

   h. A properly fitted safety harness;

   i. A 1:1 transportation paraprofessional trained to manage severe behaviors; and

   j. BCBA supervision and training of the transportation paraprofessional.

A.D. Decl. ¶¶ 14–18, 173–179.

There is no dispute that these services constitute D.D.'s pendency program. *Id*.

**C.     The DOE's Failure to Implement Pendency ABA Services**

Despite D.D.'s entitlement to 20 hours per week of home-based ABA under pendency, the DOE has failed for years to ensure that these services are delivered. A.D. Decl. ¶¶ 24–33, 147–152. Instead, the DOE has consistently placed the burden on D.D.'s parents to locate and maintain providers willing to work with a child who exhibits severe aggression, often without adequate staffing or safety supports. *Id*.

As a result, D.D. has routinely received substantially fewer ABA hours than required. *Id*. ¶¶ 26–33, 149–152. During the 2024–2025 and 2025–2026 school years, he received approximately twelve hours per week of ABA, despite being mandated for twenty. *Id*. ¶¶ 27–29, 149–150. These shortfalls are attributable to the DOE's refusal to directly arrange or fund appropriate staffing, leaving the parent to hunt for providers who want to wait months to be paid by the DOE, in an area of shortages. *Id*. ¶¶ 25–33.

**D.     The DOE's Failure to Provide Pendency Speech and Language Therapy**

D.D. is also entitled under pendency to extended-day speech and language therapy, including home-based services. A.D. Decl. ¶¶ 14–18, 183–186. The DOE has never offered or provided a speech-language pathologist to implement these services. *Id*. A.D. Decl. ¶¶ 34–38, 183–186.

D.D.'s expressive language deficits directly contribute to frustration and aggression. *Id*. A.D. Decl. ¶¶ 69–76. While D.D. has recently made gains in communicating pain, daily events, and basic needs, these gains have occurred through intensive ABA intervention and parental effort—not through DOE-provided speech therapy. *Id*. ¶¶ 71–76. The DOE's ongoing failure to provide mandated speech services deprives D.D. of a core component of his pendency program and exacerbates the behaviors the program is designed to address. *Id*. ¶¶ 34–38.

3

### E.     The DOE's Failure to Implement Required Transportation Accommodations

The most immediate and dangerous violation of pendency concerns transportation. D.D.'s pendency placement requires specialized transportation due to the extreme risk he poses to himself and others during travel. A.D. Decl. ¶¶ 19–23, 39–47.

D.D. has a documented history of removing seatbelts, banging his head against bus and car windows, attempting to strike drivers, and engaging in violent outbursts while in transit. *Id*. ¶¶ 39–44, 86–92. Accordingly, his pendency program mandates a properly fitted harness, a trained 1:1 transportation paraprofessional, BCBA supervision, and a maximum travel time of thirty minutes. *Id*. ¶¶ 19–23, 173–179.

Since at least early 2023—and continuously throughout the 2024–2025 and 2025–2026 school years—the DOE has failed to implement these transportation requirements together so D.D. can travel to school on the bus. *Id*. ¶¶ 45–55, 187–194. Although the DOE eventually procured a harness in October 2025, it has been unable to staff a trained 1:1 bus paraprofessional capable of safely managing D.D.'s behaviors. *Id*. ¶¶ 45–54, 187–194.

On multiple occasions, agencies contacted by the DOE claimed to have identified a transportation paraprofessional, only to withdraw after learning the severity of D.D.'s behaviors—information the DOE had failed to disclose. *Id*. ¶¶ 49–53, 189–192.

As a result, D.D.'s parents have been forced to transport him themselves, despite the serious risk involved. *Id*. ¶¶ 55–62, 195–201. D.D.'s father, who works overnight shifts, has been required to drive D.D. on little or no sleep, creating an unsafe situation for both parent and child. Id. ¶¶ 56–62. The family has installed a plexiglass divider in their car to prevent D.D. from attacking the driver. *Id*. ¶ 92.

4

The DOE's failure to implement transportation pendency has interfered with D.D.'s consistent school attendance and has placed extraordinary strain on the family's ability to maintain employment and basic stability. Id. ¶¶ 56–67.

**F.      Ongoing Harm and Urgency of Relief**

D.D.'s behaviors have escalated significantly in recent months, including multiple episodes requiring emergency intervention, physical restraint, and rescue medication. A.D. Decl. ¶¶ 195–206. These incidents underscore the necessity of strict adherence to his pendency program, particularly ABA services, speech therapy, and safe transportation. Id.

Absent immediate injunctive relief, D.D. faces continued loss of educational benefit, increased risk of physical harm, and further destabilization of a program that has taken years of litigation to secure. Id. ¶¶ 203–206.

**III.     ARGUMENT**

The Court should issue a preliminary injunction directing DOE Defendants to immediately implement aspects of D.D.'s stay-put placement which are not being implemented.

**A.      Plaintiffs are Entitled to an Injunction Under § 1415(j) of the IDEA.**

The IDEA requires that each state and district "establish and maintain procedures" to "ensure that children with disabilities and their parents are guaranteed procedural safeguards." 20 U.S.C. §1415. One of the main due process rights is an opportunity for a parent to present a Complaint (i.e., a DPC) concerning any matter relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. §1415(b)(6). With regard to such a complaint, the IDEA affords parents the right to an impartial hearing. 20 U.S.C. § 1415(f). The IDEA sets forth the detailed requirements for hearing rights and hearing officer qualifications. 20 U.S.C. § 1415(f); 34 C.F.R. §§ 300.511-516.

5

During IDEA proceedings, students have "pendency" or "stay-put" rights. "[U]nless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j). The purpose of the pendency provision is "to provide stability and consistency in the education of a child with a disability." *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (citing *Honig v. Doe*, 484 U.S. 305 (1988)).

The IDEA's pendency provision is effectively "an automatic preliminary injunction." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). "The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Id.*

The United States Supreme Court has held that the pendency provision is an "unequivocal" right of the child, with the purpose of preventing schools "from changing [a child's educational placement] over the parent's objection until all review proceedings [are] completed." *Honig v. Doe*, 484 U.S. 305, 323-24 (1988). Courts have equated the right to pendency to an automatic preliminary injunction without regard to the consideration of factors typically scrutinized in granting injunctive relief and regardless of the ultimate merit of the parent's position in the pending proceeding. *See Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996); *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982).

To determine the then-current educational placement, the Second Circuit has ruled that "a court typically looks" to one of the following: (1) "'the placement described in the child's most recently implemented IEP'"; (2) "'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'"; or (3) "'the placement at the time of the

6

previously implemented IEP.'" *East Lyme Bd. of Educ.*, 790 F.3d at 452 (quoting *Mackey ex rel. Thomas M. v. Bd. of Educ.*, 386 F.3d 158, 163 (2d Cir 2004)). In addition, a final administrative decision in favor of a parent's placement creates a *de jure* agreement establishing pendency in the final decision. *Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002); *see also Ventura de Paulino*, 959 F.3d at 532; *Bd. of Educ. v. Engwiller*, 170 F. Supp. 2d 410, 414 (S.D.N.Y. 2001).

In addition, as per the plain language of the Act, the DOE and parents can "otherwise agree" to modify a student's pendency placement at any time, including during a hearing. 20 U.S.C. §1415(j); *see Ventura de Paulino*, 959 F.3d at 532. An IHO's interim order can serve as the basis of the student's pendency placement. *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 CV 9679 (NSR), 2018 WL 4103494, at *5 (S.D.N.Y. Aug. 28, 2018) (finding that an IHO interim order established the student's last agreed-upon placement under the IDEA); *M.G. v. New York City Dep't of Educ.,* 982 F. Supp. 2d 240, 247-49 (S.D.N.Y. 2013) (finding that the student's pendency placement included services implemented by the DOE pursuant to an IHO interim order); *Warton v. New Fairfield Bd. of Educ.*, 125 F. Supp. 2d 22, 26 (D. Conn. 2000) (finding that IHO interim report established student's pendency placement).

An unappealed impartial hearing officer's order can constitute pendency, if the decision modifies a child's prior placement or program. *Letter to Hampden*, 49 IDELR 197 (OSEP 2007); *New York City Dept. of Educ. v. S.S.*, 2010 WL 983719 (S.D.N.Y. March 17, 2010); *Student X v. New York City Dept. of Educ.*, 2008 WL 4890440 (E.D.N.Y. Oct. 30, 2008); *Application of a Student with a Disability*, Appeal No. 08-107.

It is blackletter law that Plaintiffs are not required to exhaust claims concerning 20 U.S.C. § 1415(j) where a child is not receiving services. *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199-200 (2d Cir. 2002); *see also Ventura de Paulino*, 959 F.3d at 531; *Doe v. East*

7

*Lyme Bd. of Educ.*, 790 F.3d 440, 455 (2d Cir. 2015) ; *M.G. v. N.Y. City Dep't of Educ.*, 982 F.2d 240, 247 (S.D.N.Y. 2013). The administrative hearing and appeals process does not provide a mechanism for enforcement of IHO orders, including pendency orders and interim orders, which instead are enforceable by a court under 42 U.S.C. § 1983. *A.R. ex rel. R.V. v. N.Y. City Dep't. of Educ.*, 407 F.3d 65, 76, 78 n.13 (2d Cir. 2005); *see also M.H. v. N.Y. City Dep't of Educ.*, No. 20-cv-1923 (LJL), 2021 WL 4804031, at *31 (S.D.N.Y. Oct. 13, 2021).

Notably, moreover, D.D.'s pendency rights do not turn on the ultimate merits of his claims in the pending impartial hearing. The pendency provision of the IDEA represents "'Congress' policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved.'" *Mackey v. Bd. of Educ.*, 386 F.3d 158, 160–61 (2d Cir. 2004) (quotations omitted).

**B.     Plaintiffs Also Satisfy the Traditional Test for a Preliminary Injunction.**

In addition, or in the alternative, the Court should issue a preliminary injunction directing the relief to D.D. as Plaintiffs meet the traditional standard for a preliminary injunction.

"To obtain a preliminary injunction a party must demonstrate: (1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348–49 (2d Cir. 2003). Where an injunction is mandatory or will provide the moving party with substantially all the relief sought in a manner that cannot be undone if the defendant prevails on the merits, the moving party must show a clear or substantial likelihood of success on the merits, make a strong showing of irreparable harm, and show that the preliminary

injunction is in the public interest. *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).[2]

### 1. D.D. is Suffering and Will Continue to Suffer Irreparable Harm.

In the Second Circuit, "irreparable harm" is defined as "harm shown to be non-compensable in terms of money damages." *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113-14 (2d Cir. 2003). Irreparable harm "must be shown to be actual and imminent, not remote or speculative." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

Courts repeatedly have found that the denial of pendency and/or a FAPE constitutes irreparable harm. *See Murphy*, 297 F.3d at 199-200 (pendency); *M.W. v. N.Y. City Dep't of Educ.*, No. 15-cv-5029, 2015 WL 5025368, at **5-6 (S.D.N.Y. Aug. 25, 2015) (interruption in the student's diploma track education); *L.I.H. ex rel. L.H. v. N.Y. City Bd. of Educ.*, 103 F. Supp. 2d 658, 665 (E.D.N.Y. 2000) ("[n]o level of monetary damages could possibly compensate these students for the educational opportunities they will lose"); *A.T. v. N.Y. State Educ. Dep't*, No. 98-CV-4166 (JG), 1998 WL 765371, at *10 (E.D.N.Y. Aug. 4, 1998) (finding irreparable harm based on a FAPE denial caused by the district's failure to implement decisions in parent's favor).[3]

---

[2] Plaintiffs have focused on the mandatory injunctive standard because we believe we easily satisfy the more rigorous standard, without waiving Plaintiffs' right to assert that they need not satisfy this higher standard in order to prevail.

[3] Further, courts often find that a deprivation of general and special education services will result in irreparable harm for both over-age and still-eligible children. *See e.g., Cosgrove v. Board of Educ. of the Niskayuna Central School District*, 175 F. Supp. 2d 375, 400 (N.D.N.Y. 2001); *K.P. v Juzwic*, 891 F. Supp. 703 (D. Conn. 1995); *Ferren v. School Dist. of Pennsylvania*, 612 F.3d 712 (3rd Cir. 2010). *See also Honig v. DOE*, 484 U.S. at 323-324 (1988); *L.I.H. v. Bd. of Educ.*, 103 F. Supp. 2d 658 (E.D.N.Y. 2000); *A.T. v. New York State Educ. Dep't*, 1998 WL 765371, at *10 (E.D.N.Y. Aug.4, 1998); *Borough of Palmyra Bd. of Educ. v. F.C.*, 2 F.Supp.2d 637, 645 (D.N.J.1998); *J.B. v. Killingly Bd. of Educ.,* 990 F. Supp. 57, 72 (D.Conn.1997); *Blackman v. D.C.*, 382 F. Supp. 2d 3, 8 (D.D.C. 2005); *Skelly v. Brookfield Lagrange Park Sch. Dist.* 95, 968 F. Supp. 385 (N.D. Ill. 1997) (child denied appropriate transportation would suffer irreparable harm from homebound education and lack of social interaction; "such lost days could not be replaced in [the student's] educational life").

Although Plaintiffs need not establish irreparable harm to prevail here (because they seek relief under the IDEA's pendency provisions), they have nonetheless made a strong showing of irreparable harm.

### 2. Plaintiffs Have Established a Clear or Substantial Likelihood of Success.

Plaintiffs have established a clear and substantial likelihood of prevailing on their claim that the DOE is in violation of the IDEA's stay-put provision. The DOE's failures to implement the stay-put placements (and final orders), including the failure to provide appropriate transportation (which, the IDEA defines as a related service (34 C.F.R. §300.34(a)), are violations of the IDEA. 20 U.S.C. § 1415(j). As such, Plaintiffs easily establish a clear and substantial likelihood of success. *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 456-57 (2d Cir. 2015). *See also M.G. v. New York City Dep't of Educ.,* 982 F. Supp. 2d 240, 247-49 (S.D.N.Y. 2013) (finding that the student's pendency placement included services implemented by the DOE pursuant to an IHO interim order). The IDEA authorizes a court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). A court enjoys "broad discretion" in crafting IDEA relief, which depends upon "equitable considerations." *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 16 (1993). The relief sought is within the Court's discretion.

### IV. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court issue a preliminary injunction directing DOE Defendants to immediately implement D.D.'s stay-put rights as follows:

1. By January 5, 2025, Defendants shall implement for D.D.:
    i. transportation on an air-conditioned mini-bus with a maximum travel time of thirty (30) minutes each way;

10

    ii.    a properly fitted travel safety harness;

    iii.    a dedicated 1:1 transportation paraprofessional who is trained and capable of safely managing D.D.'s severe maladaptive behaviors during transportation;

    iv.    training and ongoing supervision of the transportation paraprofessional by a BCBA; and

    v.    any coordination necessary to ensure the safe and consistent delivery of transportation services without interruption;

2. By January 5, 2025, Defendants shall implement Alternative Transportation Pending Staffing (if necessary): In the event the DOE is unable to immediately staff a trained 1:1 transportation paraprofessional, prospective funding for alternative safe transportation, by issuing rideshare vouchers or, if that is not possible, rideshare or equivalent transportation arrangements, until such time as all pendency transportation requirements are fully implemented.

3. By January 12, 2025 Defendants shall implement extended-day speech and language therapy services, including home-based speech and language therapy, in the frequency and duration required under D.D.'s pendency placement;

4. By January 12, 2025 Defendants shall identify and arrange for the provision of appropriately trained Applied Behavior Analyst providers who can work with D.D. during the hours not currently staffed by the current providers.

5. Plaintiffs further request such other and further relief as the Court deems just and proper.

11

Dated: December 16, 2025

                                              Respectfully submitted,

                                              THE LAW OFFICE OF ELISA HYMAN, P.C.

                                              By _____
                                              Elisa Hyman, Esq.
                                              1115 Broadway, 12th Floor
                                              New York, NY 10010
                                              646-572-9064
                                              elisahyman@gmail.com
                                              Attorney for the Plaintiffs